**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jwilner@bursor.com
         lsironski@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DONALYA and JORDAN SANDERS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> FLUMGIO TECHNOLOGY INC., SMOKING VAPOR PLUS CA, LLC, VAPE JUICE DEPOT, VAPE ELEMENT, LLC, VAPORDNA, HAPPY DISTRO, AND HUFFERS & PUFFERS, LLC, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiffs Michael Donalya and Jordan Sanders ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Flumgio Technology Inc., Smoking Vapor Plus CA, LLC, Vape Juice Depot, Vape Element, LLC, VaporDNA, Happy Distro, and Huffers & Puffers, LLC (collectively, "Flum" or "Defendants"). Plaintiffs bring this action based on personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of the undersigned counsel.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit on behalf of themselves and other similarly situated consumers ("Class Members") who purchased Defendants' "Flum Float" disposable vapes (the "Product(s)").[1]

2. Vape users perceive vapes, in general, as safer than cigarettes. Unfortunately for them, Defendants' Product contains high concentrations of toxic chemicals that pose unreasonable health hazards.

3. Specifically, Defendants' Product contains shockingly high concentrations of Per- and Polyfluoroalkyl substances, commonly known as "PFAS."

4. PFAS are "large, complex group[s] of synthetic chemicals"[2] that "break down slowly, if at all."[3] Colloquially known as "forever chemicals," PFAS can build up in the body after repeated exposure and have been linked to "increased cholesterol, changes in the body's hormones and immune system, decreased fertility, and increased risk of certain cancers."[4]

---

[1] Discovery may reveal that additional Products are within the scope of this Complaint. Accordingly, Plaintiffs reserve the right to include additional items identified through the course of discovery. "Substantially similar" products include Flum-branded disposable vapes that are tested and shown to contain PFAS.

[2] Nat'l Institute of Env't. Health Sci. "Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)." (Dec. 4, 2023). Available at https://www.niehs.nih.gov/health/topics/agents/pfc (last accessed Feb. 13, 2024).

[3] *Id.*

[4] Michigan OFAS Action Response Team. "EGLE Classroom: Introduction to PFAS." Available at https://www.michigan.gov/pfasresponse/faq/categories/pfas-101 (last accessed Feb. 13, 2024).

5. In the past few years, the effects of PFAS on the lungs specifically has been studied.[5,6,7] The findings are shocking: not only are the lungs **one of the main tissues which accumulate PFAS**, specifically through inhalation[8], the lungs are also severely adversely affected by exposure to PFAS. Risks include elevated incidences of lung cancer, asthma, and overall reduced lung function and inflammation.[9]

6. In light of this, Plaintiffs' counsel commissioned a Department of Defense ELAP-certified laboratory to test the Defendants' Flum Float vape, and the results were alarming. The laboratory found that **the Product contained over 160 parts per billion of (PPB) of PFAS**. This is **320 times** the amount set by the EPA as a limit for daily oral exposure.[10] For reference, when researchers found just 0.25 parts per billion of PFAS in kale, **over *640* times less than in Defendant's Product**, they were "stunned" by the "high levels" of the compounds.[11]

7. The test results are cause for great concern: PFAS can be vaporized and inhaled, and Defendant's Product is a vape and contains stratospheric levels of PFAS. Defendants' Product poses a serious hazard to human health and is not fit for consumption.

8. Accordingly, Defendants had a duty to disclose that their Product contains PFAS.

9. However, Defendants fail to disclose the presence of PFAS in the Product on their websites or social media accounts, in their online and offline advertisements, or on the Products' packaging. Moreover, Defendants markets the Product with imagery that misleads consumers into thinking the Product does not pose unreasonable health hazards to vape users. There is a cruel

---

[5] Dragon J, Hoaglund M, Badireddy AR, Nielsen G, Schlezinger J, Shukla A. *Perfluoroalkyl Substances (PFAS) Affect Inflammation in Lung Cells and Tissues*. INT J MOL SCI. 2023 May 10;24(10):8539. doi: 10.3390/ijms24108539. PMID: 37239886; PMCID: PMC10218140.

[6] Heinle, B. C. (2019). *The Association of Perfluoroalkyl Substance Exposure and Lung Function in the U.S. Population.* Wright State University. Dayton, Ohio.

[7] Qin *et al.*, *Association of perfluoroalkyl substances exposure with impaired lung function in children*, 155 ENVIRONMENTAL RESEARCH 15-21 (2017), ISSN 0013-9351.

[8] Heinle, *supra* n.8 at 5.

[9] Dragon *et al.*, *supra* n.7

[10] EPA, *ORD Human Health Toxicity Values for Perfluoropropanoic Acid* (2023).

[11] The Guardian, *New report finds most U.S. kale samples contain 'disturbing' levels of 'forever chemicals*,' (June 30, 2023) *available* https://www.theguardian.com/environment/2023/jun/30/kale-pfas-forever-chemicals-contamination (last accessed April 11, 2024).

irony to the fact that consumers of Defendants' Products may be exposing themselves to a greater risk of lung cancer than consumers of regular cigarettes.

10. Defendants' material misrepresentations and omissions harmed Plaintiffs and Class Members who would otherwise not have purchased the Products.

11. Accordingly, Plaintiffs bring claims against Defendants individually and on behalf of classes of all others similarly situated for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq*.; (2) violation of California's Unfair Competition Law, California Business & Professions Code § 17200, *et seq*.; (3) Fraudulent Concealment or Omission; and (4) Breach of Implied Warranty of Merchantability, U.C.C. 2-314.

**PARTIES**

12. Plaintiff Michael Donalya, a citizen of California residing in San Lorenzo, California, purchased the Product in or around January 2022, from westcoastvapesupply.com while in San Lorenzo, California. Before making his purchase, Mr. Donalya saw no warning that the Product contained PFAS. Had Mr. Donalya known that Defendant's Product contained dangerous levels of PFAS, Mr. Donalya would not have purchased it or would have purchased it on substantially different terms.

13. Plaintiff Jordan Sanders is a citizen of California who resides in Eureka, California. Plaintiff Sanders purchased the Product in or around October 2023, from Discount Cigarettes in Eureka, California. Before making his purchase, Mr. Sanders saw no warning that the Product contained PFAS. Had Mr. Sanders known that the Product contained dangerous levels of PFAS, Mr. Sanders would not have purchased the Product, or would have purchased it on substantially different terms.

14. Defendant Flumgio Technology Inc. is a California corporation with its principal place of business at 18351 Colima Road #481, Rowland Heights, California. Defendant markets and sells vaping supplies, including the Product, throughout California and the United States.

15. Defendant Smoking Vapor Plus CA LLC is a limited liability company with its principal place of business at 7970 University Ave., La Mesa, CA 91942. Smoking Vapor Plus CA LLC markets and sells the Product throughout California and the United States.

16. Defendant Vape Juice Depot is a California company with its principal place of business at 555 Riverdale Dr. Ste D, Glendale, CA 91204. Vape Juice Depot markets and sells the Product throughout California and the United States.

17. Defendant Vape Element, LLC is a limited liability company with its principal place of business at 1718 Potrero Ave. Suite A, South El Monte, CA 91733. Vape Element, LLC markets and sells the Product throughout California and the United States.

18. Defendant Vapor DNA is a California corporation with its principal place of business at 160 E Freedom Ave., Anaheim, CA 92801. Vapor DNA markets and sells the Product throughout California and the United States.

19. Defendant Happy Distro is an Arizona company with its principal place of business at 4695 N. Oracle Rd., Ste. 105 Tucson, Arizona 85705. Happy Distro sells the Product throughout California and the United States.

20. Defendant Smoking Huffers & Puffers, LLC is a limited liability company with its principal place of business at 12105 Brookhurst St, Suite D/E, Garden Grove, CA 92840. Huffers & Puffers, LLC markets and sells the Product throughout California and the United States.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act ("CAFA"), because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

22. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California, including in this District, and purposefully avail themselves of the benefits of doing business in this District. In addition, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

23. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the events, omission, and acts giving rise to the claims herein occurred in this District and Plaintiffs reside in this District.

**FACTUAL ALLEGATIONS**

  **A.**  **INHALING PFAS CAUSES SIGNIFICANT HARM**

24. Per- and polyfluoroalkyl substances ("PFAS") are large, complex groups of synthetic chemicals that break down on a timescale of years, if at all, and as such can accumulate in the body over a lifetime.[12] One way PFAS exposure can occur is by using products made with PFAS or packaged in materials coated with PFAS.[13] PFAS have been linked to "increased cholesterol, changes in the body's hormones and immune system, decreased fertility, and increased risk of cancers."[14]

25. In 2021, the Biden Administration, taking on "accelerated efforts to protect Americans from per- and polyfluoroalkyl substances (PFAS), which can cause severe health problems and persists in the environment once released, posing a serious threat across rural, suburban, and urban areas," announced an agency plan to "prevent PFAS from being released into the air, dirking systems, and [the] food supply ... to remediate the impact of these harmful pollutants."[15]

26. Recently, the White House announced its plan to take aggressive action to limit peoples' exposure to these chemicals by directing the Environmental Protection Agency (EPA) to create "the first-ever national legally enforceable drinking water standard for PFAS, which will protect 100 million people from PFAS exposure, prevent tens of thousands of serious illnesses, and

---

[12] Nat'l Inst. of Health. "Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)." *U.S. Dep't of Health and Hum. Servs.* Available at https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm (last accessed Mar. 11, 2024).

[13] EPA. "Our Current Understanding of the Human Health and Environmental Risks of PFAS." (June 7, 2023). Available at https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-Risks-pfas#:~:text=Current%20research%20has%20shown%20that,may%20contain%20PFAS%2C%20including%20fish (last accessed Mar. 11, 2024).

[14] Michigan PFAS Action Response Team. "EGLE Classroom: Introduction to FPAS." Available at https://www.michigan.gov/pfasresponse/faq/categories/pfas-101 (last accessed Mar. 11, 2024).

[15] "Fact Sheet: Biden-Harris Administration Launches Plan to Combat PFAS Pollution." The White House (Oct. 18, 2021). Available at https://www.whitehouse.gov/briefing-room/statements-releases/2021/10/18/fact-sheet-biden-harris-administration-launches-plan-to-combat-pfas-pollution/ (last accessed Mar. 11, 2024).

save lives."[16] As President Biden pointedly explained, "[PFAS are] dangerous, and my administration is addressing them. The @EPA is issuing ... $1 billion from my agenda to help states detect and treat this pollutant."[17]

27. The health consequences of PFAS exposure are stark. PFAS harms the immune system, reduce antibody responses to vaccines, reduce fertility, result in hormonal changes, increase cholesterol, weaken immune system response, and heighten risk of cancer.

28. As a result, there is a growing consumer demand to eliminate PFAS from various consumer products.[18]

29. In the past few years, the effects of PFAS on the lungs specifically have been studied. Working with human bronchial epithelial cells, research scientists found that multiple inflammation- and immune-related genes were affected by exposure to PFAS. In short, **PFAS exposure alters lung biology itself** in "a significant manner" which "may contribute to asthma/airway hyper-responsiveness." [19]

30. The lungs are one of the main tissues which accumulate PFAS, specifically through inhalation,[20] and are severely adversely affected by exposure to PFAS. Risks include elevated incidences of lung cancer, asthma, and overall reduced lung function and inflammation.[21] The lungs are also a direct pathway to the circulatory system, thus PFAS which are inhaled are

---

[16] "Fact Sheet: Biden-Harris Administration Takes Critical Action to Protect Communities from PFAS Pollution in Drinking Water." The White House (April 10, 2024). Available at https://www.whitehouse.gov/briefing-room/statements-releases/2024/04/10/fact-sheet-biden-harris-administration-takes-critical-action-to-protect-communities-from-pfas-pollution-in-drinking-water/ (last accessed April 11, 2024).

[17] President Biden (@POTUS), TWITTER (April 10, 2024, 1:25 PM). Available at https://twitter.com/potus/status/1778157253633167564?s=46&amp;t=Re-0q0RQuNL6ltmOa2mCig.

[18] Elicia Mayuri Cousins, et al. "Risky Business? Manufacturer and Retailer Action to Remove Per-and Polyfluorinated Chemicals from Consumer Products." *New Solutions: J. of Env't & Occupational Health Pol'y.* (2019) 29(2), 242-65, doi: 10.1177/104829111985674.

[19] Dragon J, Hoaglund M, Badireddy AR, Nielsen G, Schlezinger J, Shukla A. "Perfluoroalkyl Substances (PFAS) Affect Inflammation in Lung Cells and Tissues." INT J MOL SCI. 2023 May 10;24(10):8539. doi:10.3390/ijms24108539. PMID: 37239886; PMCID: PMC10218140.

[20] Heinle, B. C. "The Association of Perfluoroalkyl Substance Exposure and Lung Function in the U.S. Population" (2019). Wright State University. Dayton, Ohio.

[21] Dragon *et al.*, *supra*, at 7

absorbed by the lungs and placed directly into the bloodstream where they can then be carried to every part of the body.

31.      Whether a disposable vape contains high levels of a carcinogenic and toxic chemical is material to consumers on its face.

**B.      DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS REGARDING THEIR PRODUCT MISLEAD CONSUMERS**

32.      Flum Float is one of the top-selling disposable vapes in the country.

33.      Defendants hold the Product out as a safe and "luxurious indulgence" that can provide "up to 3000 puffs."

34.      Through their representations that the Product is intended to be used as a smoking device, Defendants imply that the Product is as safe to smoke as any other vape on the market.

35.      Defendants fail to disclose the presence of PFAS, which can cause serious health effects, as discussed above. For example, the presence of PFAS is unlisted on Defendants' websites.

36.      Defendants intentionally market the Product as harmless and light on the body. The name, "Float," suggests that the product is nothing more than a bit of light, flavored air. Online and offline, Defendants' advertising juxtaposes their Products with images of fresh fruit on bright, juice-splattered backgrounds. The colorful packaging evokes associations of fruit and fruit-flavored candies. *See* Figures 1 – 2. Taken together, Defendants go out of their way to portray the


*Figure 1*


*Figure 2*

Product as safe and even healthful; as an activity that in addition to having minimal impact on the body, could even be described as "delightful." *See* Figure 2.

37. Defendants' marketing misrepresents the Product by omitting the fact that it poses unreasonable health hazards beyond that which consumers would encounter through the use of vapes manufactured by Defendants' competitors.

38. In the Product description on https://www.flumgio.com and other websites, Defendants describe the physical qualities of the vape in detail but provide no information, nutritional or otherwise, on the vape juice contained within the vape. Nor do Defendants disclose the presence of PFAS in the Product, despite having a duty to disclose this information.

39. There is similarly no warning on the Products' packaging that the Product contains dangerous levels of PFAS.

40. Defendants do not disclose that the levels of PFAS contained in their vape are substantially higher than those contained in vapes manufactured by their industry competitors. In fact, Plaintiffs' counsel have tested competing brands' disposable vapes and found undetectable levels of PFAS. Accordingly, the Products can be manufactured without the presence of PFAS.

**C.   DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS ARE ACTIONABLE**

41. Defendants have a duty to disclose material facts and to warn consumers of unreasonable health hazards.

42. Plaintiffs' counsel commissioned an ELAP-certified laboratory to test Defendant's Products and found that the liquid in Defendant's Products contained 160 parts per billion (PPB) of PFAS. This is 320 times the amount set by the EPA as a limit for daily oral exposure.

43. These results are contrary to the representations and omissions made throughout Defendants' marketing, as discussed above. Defendants' material representations and omissions likewise harmed Plaintiffs.

44. What is more, Plaintiffs and all other consumers could not have discovered that Defendants' Products contain PFAS on their own because they do not have access to ELAP-certified laboratories to conduct testing.

## CLASS ALLEGATIONS

45. Plaintiffs bring this matter on behalf of themselves and all similarly situated in the following class (the "Nationwide class"):

> All natural persons in the United States who purchased the Product, and all substantially similar products, during the applicable statutory period.

46. Plaintiffs also bring this matter on behalf of themselves and all similarly situated in the following subclass (the "California subclass")

> All natural persons in California who purchased the Product, and all substantially similar products, during the applicable statutory period.

47. The Class and California Subclass are referred to collectively as the "Classes" throughout this complaint.

48. The "Statutory Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

49. Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

50. Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more Subclasses, in connection with their motion for class certification, or at any other time, based on *inter alia*, changing circumstances and new facts obtained.

51. **Numerosity:** Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are tens of thousands of people who purchased the Product and substantially similar versions of the Product, who have been injured by Defendant's false and misleading representations. While the exact number of members of each Class is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery from records maintained by Defendants and their agents.

52.     **Commonality and Predominance:** The questions of law and fact common to the classes which predominate over any questions which may affect individual class members include, but is not limited to:

  (a) Whether Defendants' Product contains PFAS;

  (b) Whether Defendants breached an implied warranty of merchantability;

  (c) Whether Defendants had a duty to disclose the presence of PFAS in their Product;

  (d) Whether Plaintiffs and Class Members reasonably relied on Defendants' representations, warranties, and omissions;

  (e) Whether Defendants' conduct violated California's consumer protection statutes;

  (f) Whether Defendants' conduct amounted to violations of the common law; and

  (g) Whether the knowledge of the presence (or risk thereof) of PFAS in the Product would be material to a reasonable consumer.

53.     **Typicality:** The claims of the named Plaintiffs are typical of the claims of the members of the Classes because the named Plaintiffs, like other members of the Classes, purchased the Product and Defendants' substantially similar Products, relying on the representations and warranties made by Defendants on the Product's packaging and online that the Product was safe for ordinary use as a disposable vape.

54.     **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs are able to fairly and adequately represent the interest of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Class or additional claims as may be appropriate.

55.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presented fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### California Civil Code § 1750, *et seq.*

56.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

57.     Plaintiffs bring this claim individually and on behalf of the Classes against Defendants.

58.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods ... have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have..."

59.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if they are of another."

60.     Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them as advertised."

61. Defendants violated Civil Code §§ 1770(a)(5), (a)(7), and (a)(9) by holding out the Product as safe to smoke and failing to disclose to consumers that their Products contained high concentrations of PFAS and therefore pose an unreasonably high health hazard.

62. The Product is not fit for consumption because the Product contains harmful PFAS and poses an unreasonably high risk of adverse health consequences.

63. Defendants had exclusive and/or superior knowledge of the health risks of the Product, which was not known to Plaintiffs or the Class.

64. Defendants made misrepresentations to Plaintiffs and members of the Classes while suppressing the true nature of the Product. Specifically, Defendants held out that the Product as being safe to smoke, including on the product packaging, on their websites, and in their marketing, without disclosing that the Product contains toxic PFAS. As such, Defendants affirmatively misrepresented the Product despite their knowledge that the Product was not as advertised.

65. Plaintiffs and the Classes have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Product that they otherwise would not have incurred or paid and were unknowingly exposed to a significant and substantial health risk.

66. On May 20, 2024, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant Flumgio Technology, Inc. a notice letter which complies in all respects with Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to the presence of PFAS in the Product, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of all other similarly situated purchasers.

67. Defendant Flumgio Technology, Inc. failed to remedy the issues raised by the notice letter.

68. On July 25, 2024, in compliance with the provisions of California Civil Code § 1782, Plaintiffs sent written notice to Defendants Smoking Vapor Plus CA, LLC, Vape Juice Depot, Vape Element, LLC, Vapor DNA, and Huffers & Puffers, informing each entity of his

intention to seek damages under California Civil Code § 1750.  The letters were sent via certified mail, return receipt requested, advising each Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiffs and "all other persons similarly situated."  All Defendants but Defendant Happy Distro have been served with the notice letter.

69. Pursuant to Civ. Code § 1780, Plaintiffs and the Class seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendants from continuing their violative acts and practices; (c) restitution of all money and property lost by Plaintiffs and the Class as a result of Defendants' unlawful conduct; (d) punitive damages; (e) any other relief that the court deems proper; and (f) attorneys' costs and fees.

## COUNT II
### Violation of California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*

70. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

71. Plaintiffs bring this claim individually and on behalf of the Classes against Defendants.

72. California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act of practice."  For the reasons discussed above, Defendants have engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business and Professions Code § 17200.

73. By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 – 17210 by engaging in unlawful, unfair, and fraudulent conduct.

74. Defendants have violated the UCL's proscription against engaging in **Unlawful Business Practices** by violating the CLRA, Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9).

75. As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of their Product are likely to deceive reasonable consumers.  In addition,

1   Defendants have committed unlawful business practices by, *inter alia*, making the representations
2   and omissions of material facts, as set forth more fully above, thereby violating the common law.

3       76.    Plaintiffs and Classes reserve the right to allege other violations of law which
4   constitute other unlawful business acts or practices.

5       77.    Defendants have also violated the UCL's prohibition against engaging in **Unfair
6   Business Practices**.  Defendants' acts, omissions, misrepresentations, practices, and non-
7   disclosures as alleged herein also constituted "unfair" business acts and practices within the
8   meaning of Bus. & Prof. Code § 17200, *et. seq.*, as the conduct is substantially injurious to
9   consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the
10  gravity of the conduct outweighs any alleged benefits attributable to such conduct.

11      78.    There were reasonably available alternatives to further Defendants' legitimate
12  business interest other than the conduct described herein as noted above.

13      79.    Defendants have further violated the UCL's proscription against engaging in
14  **Fraudulent Business Practices**.  Defendants' claims, nondisclosures, and misleading statements
15  with respect to the Product, as more fully set forth above, were false, misleading, and/or likely to
16  deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

17      80.    Plaintiffs and the Classes suffered a substantial injury by virtue of buying the
18  Product that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair
19  marketing, advertising, packaging, and omissions about the inclusion of harmful toxins in their
20  Product.

21      81.    There is no benefit to consumers or competition from deceptively marketing and
22  omitting material facts about the true nature of the Product.

23      82.    Plaintiffs and the Classes had no way of reasonably knowing that the Product they
24  purchased was not marketed, advertised, packaged, or labeled truthfully.  Thus, they could not have
25  reasonably avoided the injury each of them suffered.

26      83.    The gravity of the consequences of Defendants' conduct as described outweighs any
27  justification, motive, or reason therefore, particularly considering the available legal alternatives
28  which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends

established public policy, and/or is substantially injurious to Plaintiffs and the other members of the Classes.

84. Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and the Classes seek an order of this Court that includes, but is not limited to, requiring Defendants to (a) provide restitution to Plaintiffs and other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiffs' attorneys' fees and costs.

### COUNT III
### Fraudulent Concealment or Omission

85. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

86. Plaintiffs bring this claim individually and on behalf of the Classes.

87. Plaintiffs bring this claim under the laws of the State of California.

88. At all relevant times, Defendants engaged in the business of designing, manufacturing, distributing, and selling the Product.

89. Defendants, acting through their representatives or agents, delivered the Product through various channels to consumers.

90. Defendants willfully, falsely, and knowingly omitted material information and made material, affirmative misrepresentations regarding the quality and character of the Product as discussed throughout.

91. Rather than inform consumers of the truth regarding the Product, Defendants misrepresented the quality of the Product as discussed herein at the time of purchase.

92. Defendants made these material omissions and material, false misrepresentations to boost or maintain sales of the Product, and to falsely assure purchasers of the Product that their Product is as safe as other vapes, when in reality it contains dangerously high levels of PFAS chemicals. The omitted information and partial representations were material to consumers because the representation played a significant role in the value of the Product purchased.

93. Plaintiffs and the Classes had no way of knowing that Defendants' representations were false and misleading.

94. Defendants had an ongoing duty to ensure the disclosure of accurate information regarding the Product because it possessed exclusive knowledge of this information and the information pertains to matters of health, yet, Defendants did not fulfill that duty because they failed to disclose that the Products contain PFAS.

95. Defendants misrepresented material facts partly to pad and protect their profits, as they saw that profits and sales of the Product were essential for their continued growth and to maintain and grow their reputation as manufacturers and/or distributors of the Product. Such benefits came at Plaintiffs' and the Classes' expense.

96. Plaintiffs and the Classes were unaware of these material misrepresentations and omissions, and they would not have acted as they did had they known the truth. Plaintiffs' and Class Members' actions were justified given Defendants' misrepresentations and omissions. Defendants were in the exclusive control of material facts, and such facts were not known to the public.

97. Due to Defendants' misrepresentations, Plaintiffs and the Classes sustained injury due to the purchase of the Product that did not live up to their advertised representations. Plaintiffs and the Classes are entitled to recover full refunds for the Product they purchased due to Defendants' misrepresentations.

98. Defendants' acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being, and in part to enrich themselves at the expense of consumers. Defendants' acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competing products. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT IV
**Breach of Implied Warranty of Merchantability**

99. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

100. Plaintiffs bring this claim individually and on behalf of the Classes.

101. Plaintiffs bring this claim under the laws of the State of California.

102. Defendants routinely engage in the distribution, and/or sale of disposable vapes and are merchants that deal in such goods or otherwise holds themselves out as having knowledge or skill particular to the practices and goods involved.

103. Plaintiffs and members of the Classes were consumers who purchased Defendants' Products for the ordinary use of such products.

104. By selling disposable vapes, Defendants impliedly warranted to consumers that the Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

105. However, the Products were not of the same average grade, quality, and value as similar disposable vapes sold under similar circumstances because they contained exceedingly high levels of PFAS, creating an additional unreasonable hazard to consumers' health.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

106. Plaintiffs and Members of the Classes purchased the Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

107. The Products were not altered by Plaintiffs or the Class or Subclass members.

108. The Products were defective when they left Defendants' control.

109. On May 29, 2024, prior to the filing of this Complaint, Plaintiff's counsel sent Flumgio Technology Inc. a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of implied warranties.  The letter was sent via certified mail to Flumgio's California designated agent and to its principal place of business.  The letter advised Flumgio that it was in violation of U.C.C. 2-314 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.  A substantially similar letter was sent to the remaining Defendants on July 25, 2024.  All Defendants but Defendant Happy Distro have been served with the notice letter.

# REQUEST FOR RELIEF

110. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes, and Plaintiffs' attorneys as Class counsel;

(b) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper;

(h) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

# JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: October 4, 2024

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          jwilner@bursor.com
          lsironski@bursor.com

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs. Plaintiff Michael Donalya resides in San Lorenzo, California. Plaintiff Jordan Sanders resides in Eureka, California. I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Plaintiffs purchased the Product while in this District. Additionally, Defendants advertised, marketed, manufactured, distributed, and/or sold the Product at issue to Class Members in this District.

3. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this October 4, 2024.

*/s/ L. Timothy Fisher*
L. Timothy Fisher