1

**SHM Law Firm**
Hongchang Deng (State Bar No. 354529)
25F, China Resources Tower
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China
Telephone: : +86 18681567690
E-mai: Deng.hongchang@shm.law

2

3

4

5

*Attorney for Defendant*
*Flumgio Technology, Inc.*

6

7

8

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

9

10

11

JORDAN SANDERS and MICHAEL
DONALYA, individually and on behalf of all
others similarly situated,

12

13

Plaintiffs,

14

v.

15

FLUMGIO TECHNOLOGY INC., SMOKING
VAPOR PLUS CA, LLC, VAPE JUICE
DEPOT, VAPE ELEMENT, LLC,
VAPORDNA, HAPPY DISTRO, AND
HUFFERS & PUFFERS, LLC,

16

17

18

19

Defendants.

Case No. 4:24-cv-06991-YGR

**DEFENDANT FLUMGIO
TECHNOLOGY INC.'s MOTION TO
DISMISS CLASS ACTION
COMPLAINT**

Date:        May 20, 2025
Time:        2:00 p.m.

Hon. Yvonne Gonzalez Rogers

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL PARTIES OF RECORD:**

PLEASE TAKE NOTICE that on May 20, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, Fourth Floor of the Oakland Federal District Courthouse, located at 1301 Clay Street, Oakland, California, Defendants FLUMGIO TECHNOLOGY INC. ("Flumgio") will and hereby do move to dismiss the Class Action Complaint filed by Plaintiffs JORDAN SANDERS and MICHAEL DONALYA, pursuant to:

- Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction;

- Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; and

- Federal Rule of Civil Procedure 9(b) for failure to plead claims sounding in fraud with particularity.

This Motion seeks an order from the Court dismissing the Complaint in its entirety.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the Affidavit of Hongchang Deng and attached exhibits, any additional filings including a reply brief, and any other arguments or evidence that may be presented at the hearing on this matter.

Dated: April 3, 2025

Respectfully Submitted
**SHM LAW FIRM**

By: */s/ Hongchang Deng*
      Hongchang Deng

Hongchang Deng (State Bar No. 354529)
25F, China Resources Tower
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

*Attorney for Defendant Flumgio Technology, Inc.*

1

2

## TABLE OF CONTENTS

3

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................4

    I. The Allegations in Plaintiff's Complaint. ..........................................................4

    II. What Are PFAS (Per- and Polyfluoroalkyl Substances)? ...............................6

ARGUMENT .............................................................................................................7

    I. LEGAL STANDARD .......................................................................................7

    II. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) ......9

        a. Plaintiff Fails to Plausibly Allege that Any Unit of the Product

            Contained "Harmful" PFAS at "Dangerous" Levels That Pose

            a Genuine Health Risk. ....................................................................... 10

        b. The Complaint Fails to Allege That the Tested Product Was

            Purchased by Plaintiffs and That the Product They Purchased

            Was Harmful ....................................................................................... 16

    III. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) ....17

        a. Plaintiffs Do Not Plausibly Allege That Any Aspect of the

            Product's Packaging or Advertising Is Misleading or

            Deceptive. ........................................................................................... 18

        b. Plaintiffs Cannot State a Claim Based on Omission Under

            California Consumer Protection Laws. ...........................................20

        c. Plaintiffs Cannot State a Claim Based on Breach of Implied

             Warranty of Merchantability. ...........................................................22

CONCLUSION ........................................................................................................22

1

## TABLE OF AUTHORITIES

2

**Case**                                                                                        **Page(s)**

3

*Bullard v. Costco Wholesale Corp.,*

4

   No. 24-CV-03714-RS, 2025 WL 506271 (N.D. Cal. Feb. 14, 2025)................................ 1, 10, 15

5

*Krakauer v. Recreational Equip., Inc.,*

6

   No. C22-5830 BHS, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024)...................... 9, 16, 17, 18

7

*GMO Free USA v. Cover Girl Cosmetics,*

8

   No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022) ................................................. 7

9

*Ashcroft v. Iqbal,*

10

   556 U.S. 662, 678 (2009)........................................................................................... 8

11

*Axon v. Citrus World, Inc.,*

12

   354 F. Supp. 3d 170, 174, 2018 WL 6448648 (E.D.N.Y. 2018), aff'd, 813 F. App'x 701, 2020

13

   WL 2787627 (2d Cir. 2020)........................................................................................ 20

14

*Balistreri v. Pacifica Police Dep't,*

15

   901 F.2d 696, 1988 WL 192736 (9th Cir. 1988)........................................................ 17

16

*Becerra v. Dr. Pepper/Seven Up, Inc.,*

17

   945 F.3d 1225 (9th Cir. 2019)..................................................................................... 19

18

*Bell Atl. Corp. v. Twombly,*

19

   550 U.S. 544 (2007)............................................................................................. 8, 10, 13

20

*Bowen v. Energizer Holdings, Inc.,*

21

   No. 23-55116, 2022 WL 18142508, (C.D. Cal. Aug. 29, 2022)................................. 17

22

*Conservation Force v. Salazar,*

23

   646 F.3d 1240, 1241–42 (9th Cir. 2011)..................................................................... 7

24

*Ebner v. Fresh, Inc.,*

25

   838 F.3d 958, 965 (9th Cir. 2016)............................................................................... 19

26

*Eisen v. Porsche Cars N. Am.,*

27

   No. CV 11–9405 CAS (FEMx), 2012 WL 841019 (C.D. Cal. Feb. 22, 2012)............. 18

28

*Fraker v. Bayer Corp.,*

No. CV F 08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)................................ 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*

528 U.S. 167 (2000)........................................................................................................... 7, 9

*Garland v. Children's Place, Inc*

No. 23 C 4899, 2024 WL 1376353 (N.D. Ill. Apr. 1, 2024)................................................ 21

*Hawyuan Yu v. Dr. Pepper Snapple Group, Inc.,*

No. 18-cv-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)................................... 19

*Herrington v. Johnson & Johnson Consumer Cos.,*

No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)................................. 15, 20

*Hodsdon v. Mars, Inc.,*

891 F.3d 857 (9th Cir. 2018)............................................................................................ 20

*In re GlenFed, Inc. Sec. Litig.,*

42 F.3d 1541 (9th Cir. 1994)........................................................................................ 17, 18

*Kearns v. Ford Motor Co.,*

567 F.3d 1120 (9th Cir. 2009)........................................................................................... 8

*Lavie v. Procter & Gamble Co.,*

129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003)...................................................................... 19

*Leppert v. Champion Petfoods USA Inc.,*

No. 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019)................................................ 8

*LiMandri v. Judkins,*

60 Cal. Rptr. 2d (Ct. App.1997)........................................................................................ 21

*Lujan v. Defs. of Wildlife,*

504 U.S. 555 (1992)............................................................................................................ 7

*Mexia v. Rinker Boat Co.,*

174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (2009).................................................... 22

*Parks v. Ainsworth Pet Nutrition, LLC,*

377 F. Supp. 3d 241, 2019 WL 1924906 (S.D.N.Y. 2019)................................................ 20

*Pels v. Keurig Dr. Pepper, Inc.,*

No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019)............................................17

*Robichaud v. Speedy PC Software*,

   No. C 12-04730 LB, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013)..................................................8

*Rodriguez v. Mondelez Global, LLC*,

   No. 23-CV-00057-DMS-AHG, 2023 WL 8115773 (S.D. Cal. Nov. 22, 2023).........................21

*Seidl v. Artsana, USA, Inc.*,

   643 F. Supp. 3d 521, 2022 WL 17337910 (E.D. Pa. 2022)..........................................................21

*Solis v. Coty, Inc.*,

   No. 22-CV-0400-BAS-NLS, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023)..................................16

*Spokeo, Inc. v. Robins*,

   578 U.S. 330 (2016) ...................................................................................................................... 9

*Vasquez v. Los Angeles Cnty.*,

   487 F.3d 1246 (9th Cir. 2007)......................................................................................................17

*Vess v. Ciba-Geigy Corp. USA*,

   317 F.3d 1097 (9th Cir. 2003)........................................................................................................8

*Warth v. Seldin*,

   422 U.S. 490 (1975) ...................................................................................................................... 9


**Statutes and Regulations**

California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq....... 5

California's Unfair Competition Law, California Business & Professions Code §17200, et seq........5

Health & Saf. Code, §108945................................................................................................ 5

Implied Warranty of Merchantability, U.C.C. 2-314.......................................................... 5

21 C.F.R. § § 177.1550, 176.170, 175.300.......................................................................... 6

Cal. Com. Code § 2314(2)(c)...............................................................................................22

**MEMORANDUM OFPOINTS AND AUTHORITIES**

Defendant Flumgio Technology Inc. ("Flumgio") respectfully moves to dismiss the Plaintiffs' Class Action Complaint (The "Complaint") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). The Complaint fails at every level: Plaintiffs lack Article III standing because they do not allege any concrete, particularized injury. The pleading also fails to state a claim, as it does not plausibly allege that any statement by Flumgio was false or misleading. Finally, Plaintiffs' fraud-based claims fall far short of the heightened pleading requirements of Rule 9(b), as they identify no specific misrepresentation made by any Flumgio representative on which they relied. Dismissal is therefore warranted.

## <u>INTRODUCTION</u>

"PFAS" is not a magic word that can be invoked to open automatically the doors to federal litigation. *See Bullard v. Costco Wholesale Corp.,* No. 24-CV-03714-RS, 2025 WL 506271 (N.D. Cal. Feb. 14, 2025). *See* also Exhibit A. Yet here, Plaintiffs use "PFAS" as a catch-all label—without scientific context or factual support—in an attempt to create federal jurisdiction and hold Flumgio liable without alleging any actual harm, false statement, or violation of law.

Plaintiffs allege in the Complaint that "Flum Float" disposable vapes'("Products") unfit for sale and for their intended purpose because they contain "forever chemicals," known as PFAS. They further contend that the presence of these substances renders the products "dangerous" to human health and inconsistent with Flumgio's representations of being healthy or natural. However, Plaintiffs' allegations fall far short of establishing any actionable claim.

Notably, Plaintiffs themselves acknowledge that PFAS constitute a large and chemically diverse class of synthetic compounds. By describing PFAS as a "large, complex group of synthetic chemicals" (Compl. ¶4), they implicitly concede that the term encompasses a broad array of distinct substances with differing chemical and toxicological profiles—most of which have not been associated with any known health risks. In fact, several PFAS compounds are expressly approved for use by the U.S. Food and Drug Administration ("FDA") in products such as

cosmetics and food packaging. While the Environmental Protection Agency ("EPA") has raised concerns about a limited number of specific PFAS types, the regulatory landscape does not support Plaintiffs' suggestion that the mere presence of any PFAS constitutes a danger.

Despite the gravity of their claims, Plaintiffs do not allege that any particular "toxic" PFAS compounds are present in the Product—let alone in quantities that pose any meaningful risk. The Complaint fails to identify a single specific PFAS chemical found in any Flum Float device. In reality, PFAS are commonly utilized in a vast array of consumer products due to their performance-enhancing characteristics, including resistance to oil, water, heat, and friction. By invoking the umbrella term "PFAS" without distinction, Plaintiffs obscure the nature and scope of their allegations and fail to present any plausible theory of harm or misrepresentation stemming from the incidental presence of trace compounds.

More fundamentally, Plaintiffs do not even plausibly allege that the particular product they purchased contained PFAS at all. They also do not—and cannot—claim that PFAS were added intentionally to the product, because they were not. The Complaint references testing conducted by an unspecified laboratory, yet offers no detail regarding the tested sample, its chain of custody, or whether it corresponds to a unit actually purchased by either Plaintiff.

Even assuming, for the sake of argument, that the test report cited by the Complaint reflects an analysis of the specific Products purchased by Plaintiffs, Plaintiffs allege that laboratory testing revealed the product contains "over 160 parts per billion (PPB) of PFAS," and assert that this "is 320 times the amount set by the EPA as a limit for daily oral exposure." (*See Compl. ¶6*). However, this comparison is scientifically unsound and fundamentally flawed. The value Plaintiffs refer to— $5 \times 10^{-4}$ mg/kg-day — appears in the EPA's *ORD Human Health Toxicity Values for Perfluoropropanoic Acid (2023)* (*See Compl. ¶6*) and represents an oral reference dose (RfD): the estimated maximum daily intake of a substance per kilogram of body weight[1] (See also Exhibit B)

---

[1] "[t]he RfD is generally expressed in units of milligrams per kilogram of bodyweight per day (**mg/kg/day**)." This value represents the estimated daily exposure to a substance that is not likely to cause harmful effects over a lifetime. See U.S. Envtl. Prot. Agency, Reference Dose (RfD): Description and Use in Health Risk Assessments, https://www.epa.gov/iris/reference-dose-rfd-description-and-use-health-risk-assessments (last visited Apr. 2, 2025).

that is unlikely to pose health risks. In contrast, the 160 PPB[2] (See also Exhibit C) figure cited from the lab report is a measure of static chemical concentration within the vape liquid. These are two fundamentally different units—dose versus concentration—and cannot be compared without an appropriate exposure assessment model.

Plaintiffs offer no methodology for converting PPB-level concentration in a liquid into a projected mg/kg-day dose for any actual user. Nor do they allege that a user would absorb PFAS from the product in an amount approaching the RfD, or that the specific compound identified in the ORD report—perfluoropropanoic acid (PFPrA)—is the same PFAS allegedly detected. In short, Plaintiffs' "320 times the limit" claim is based on a flawed comparison between fundamentally incompatible units, and fails to establish any plausible health risk or misrepresentation.

Further, Plaintiffs attempt to support their "dangerous amount" theory by citing a media article from The Guardian referencing PFAS levels in kale. (*See Compl. ¶6*). But this second benchmark suffers from the same flaws. The article itself is not a scientific or regulatory authority, and it merely summarizes a non-governmental pilot study unrelated to the Product at issue. That study tested kale and identified a list of specific PFAS compounds—none of which includes Perfluoropropanoic Acid, the compound underlying Plaintiffs' first standard. In short, Plaintiffs rely on two unrelated benchmarks involving different PFAS substances and attempt to compare them to the same alleged 160 PPB figure tested from the Product. This inconsistent, compound-switching approach renders their entire "exceedance" theory scientifically invalid and legally implausible.

Courts assessing similar PFAS-based claims have consistently held that a viable contamination theory requires more than speculation. To proceed, a plaintiff must allege more than the theoretical possibility that the product they personally purchased was affected. Vague suspicions based on unidentified samples do not meet this standard.

---

[2] "Another common unit is parts per billion (ppb), which is also expressed as microgram per liter (μg/l) or microgram per kilogram (μg/kg). In drinking water results, you may also see parts per trillion (ppt)....One ppb would be equal to one drop of ink in a 10,000-gallon swimming pool." See Missouri Dep't of Nat. Res., Understanding Data, https://dnr.mo.gov/monitoring/understanding-data (last visited Apr. 2, 2025).

Nor do Plaintiffs allege that they—or anyone else—have experienced any adverse effects from using Flum Float products. There are no claims of injury, no symptoms, and no heightened risk of disease. Flumgio makes no promises that its products are PFAS-free, medically beneficial, or toxin-free. Plaintiffs do not identify any statement on the product or its packaging that is demonstrably false.

These shortcomings, apparent on the face of the Complaint, are fatal to all asserted claims. First, Plaintiffs fail to allege a concrete and particularized injury sufficient to satisfy Article III standing. Second, the Complaint fails to state any viable cause of action, as it lacks factual allegations supporting a false or misleading statement. Third, Plaintiffs' fraud-based theories collapse under Rule 9(b) because they do not identify any specific representation by any Flumgio agent that they relied upon. For all these reasons, the Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

### I.    The Allegations in Plaintiff's Complaint.

Plaintiffs Michael Donalya and Jordan Sanders, both residents of California, allege that they purchased Flum Float disposable vape products on two occasions—Mr. Donalya in or around January 2022 from a third-party online retailer, and Mr. Sanders in or around October 2023 from a local retail store. (Compl. ¶¶ 12–13.)

Plaintiffs allege that Flumgio intentionally markets the Products as light and harmless, through the use of branding elements such as the word "Float," images of fresh fruit, bright, colorful packaging, and juice-splattered backgrounds. (Compl. ¶ 36.) They claim that these marketing choices were designed to suggest that the Product is "delightful" and minimally impactful on the body. Plaintiffs further assert that Flumgio omits material information about including any mention of PFAS, either on the product packaging or in online listings. (Id. ¶¶ 37 – 40.) However, Plaintiffs do not cite any affirmative statement made by Flumgio about PFAS, product safety, or comparative chemical levels, nor do they identify any specific advertisement or

disclosure upon which they personally relied. (Id. ¶¶ 37 – 40.)

Plaintiffs do not allege that they tested the Flum Float products they **personally purchased**. Instead, they claim that their attorneys arranged testing through a Department of Defense ELAP-certified laboratory, which allegedly "revealed the Product contains 160 parts per billion (PPB) of PFAS." (Compl. ¶¶ 6, 42.) Notably absent from the Complaint is any allegation as to **which of the thousands of PFAS compounds** was detected—**or whether the compound identified** is among those considered potentially harmful by regulators or scientists.

Moreover, Plaintiffs attempt to characterize the 160 ppb result as "320 times the amount set by the EPA as a limit for daily oral exposure," referencing a toxicity value from the EPA's 2023 *ORD Human Health Toxicity Values for Perfluoropropanoic Acid*. (Compl. ¶ 6.) This comparison is scientifically baseless. The EPA's oral reference dose—$5 \times 10^{-4}$ mg/kg-day—is an estimated daily intake threshold based on body weight, whereas 160 ppb is a static concentration measure of PFAS in a liquid. These are fundamentally different units—dose versus concentration—that cannot be compared without an appropriate exposure assessment model accounting for usage patterns, inhalation rates, and absorption. Plaintiffs offer no such analysis.

Furthermore, Plaintiffs do not allege that Flumgio advertised any specific health benefits; they do not allege that the Product contains ingredients other than those typically found in disposable vapes; they do not allege that the vape's flavor, labeling, or presentation deviated from how it is described; and they do not allege that the Product failed to function as expected. Nor do they allege that they—or any consumer—suffered any adverse health effects, symptoms, or reactions as a result of using the Product. At bottom, Plaintiffs seek to manufacture liability based on generalized aesthetic impressions and omissions, not on any misrepresentation they actually saw, relied on, or were harmed by.

Plaintiffs bring claims against Flumgio individually and on behalf of classes of all others similarly situated for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq.; (2) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, et seq.; (3) Fraudulent Concealment or

Omission; and (4) Breach of Implied Warranty of Merchantability, U.C.C. 2-314.

## II.   What Are PFAS (Per- and Polyfluoroalkyl Substances)?

PFAS, or per- and polyfluoroalkyl substances, refer to an extremely broad class of synthetic fluorinated chemicals that contain at least one fully fluorinated carbon atom.[3] Plaintiffs themselves describe PFAS as a "large, complex group of synthetic chemicals." (Compl. ¶ 4.) In fact, over 15,000 distinct compounds fall under the general definition of PFAS[4], each with potentially different structures, properties, and toxicological profiles. These substances are widely used in industrial, commercial, and food-related applications because of their resistance to oil, water, heat, and friction. PFAS are commonly found in waterproof textiles, non-stick cookware, stain-resistant coatings, and food packaging.

The U.S. Environmental Protection Agency (EPA) confirms that "[t]here are thousands of PFAS with potentially varying effects and toxicity levels," but only "exposure to certain PFAS in the environment may be linked to harmful health effects in humans and animals."[5] See also Exhibit D. In fact, only a narrow subset of PFAS compounds—primarily perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS)—has been subject to meaningful regulatory scrutiny due to concerns about potential human toxicity under specific conditions.

By contrast, many other PFAS compounds—such as PTFE (polytetrafluoroethylene)—have been expressly authorized for decades by the U.S. Food and Drug Administration (FDA) for use in food contact materials, food processing equipment, and cosmetics. See, e.g., 21 C.F.R. §  § 177.1550, 176.170, 175.300. The FDA has concluded that these substances "are safe for their

---

[3] "'Perfluoroalkyl and polyfluoroalkyl substances' or 'PFAS' means a class of fluorinated organic chemicals containing at least one fully fluorinated carbon atom." *See, e.g., Cal. Health & Saf. Code § 108945*

[4] "PFAS are a group of nearly 15,000 synthetic chemicals, according to a chemicals database (CompTox) maintained by the U.S. Environmental Protection Agency." *See National Institute of Environmental Health Sciences (NIEHS), Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS),* https://www.niehs.nih.gov/health/topics/agents/pfc (last accessed Apr. 2, 2025)

[5] *See U.S. Envtl. Prot. Agency, Our Current Understanding of the Human Health and Environmental Risks of PFAS,* https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Apr. 2, 2025).

intended use," based on "rigorous scientific review before they are authorized for the market." [6] See also Exhibit E.

Courts have likewise acknowledged that not all PFAS are harmful. *See, e.g., GMO Free USA v. Cover Girl Cosmetics,* No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022) (recognizing that certain forms of PFAS "have not been found to be toxic or environmentally unsafe"). See also Exhibit F.

In short, "PFAS" is not a synonym for danger. Without identifying the specific compound allegedly present in the Product—and whether it falls within the small group of PFAS considered potentially hazardous—Plaintiffs' sweeping allegations lack both scientific grounding and legal sufficiency.

## ARGUMENT

### I.    LEGAL STANDARD

Defendant Flumgio respectfully moves to dismiss the Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).

Dismissal under Rule 12(b)(1) is warranted because Plaintiffs lack Article III standing. To satisfy the standing requirement, a plaintiff must show "(1) it has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 – 81 (2000) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 – 61 (1992)).

A motion brought under Rule 12(b)(6) challenges the legal sufficiency of the claims asserted in the complaint. See *Conservation Force v. Salazar*, 646 F.3d 1240, 1241 – 42 (9th Cir. 2011). Dismissal is appropriate where the complaint either "lacks a cognizable legal theory" or

---

[6] "The FDA has authorized certain PFAS for use in specific food contact applications. Some PFAS are used in cookware, food packaging, and in food processing..." See *U.S. Food & Drug Admin., Per- and Polyfluoroalkyl Substances (PFAS),* https://www.fda.gov/food/environmental-contaminants-food/and-polyfluoroalkyl-substances-pfas (last visited Apr. 2, 2025).

fails to allege "sufficient facts under a cognizable legal theory." Id. at 1242 (internal quotation marks and citation omitted). Although the complaint need not include "detailed factual allegations," it must set forth enough factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that allow the court to reasonably infer the defendant's liability for the alleged misconduct. Id. (citing *Twombly*, 550 U.S. at 556). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Assessing plausibility is a context-specific inquiry that calls upon the court's "judicial experience and common sense." *Id*. at 679.

Moreover, because Plaintiffs assert claims sounding in fraud — including fraudulent concealment and statutory consumer deception—they must meet the heightened pleading standard of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This includes identifying the "who, what, when, where, and how" of the alleged misconduct. See *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

This particularity requirement applies not only where fraud is an express element of a claim, but also where the plaintiff's theory is based on a "unified course of fraudulent conduct." In such circumstances, all claims — whether labeled as fraud or not — must be pled with the specificity required under Rule 9(b). See *Vess*, 317 F.3d at 1103 – 04; see also *Robichaud v. Speedy PC Software*, No. C 12-04730 LB, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013) (applying Rule 9(b) to claims for UCL violations, fraudulent inducement, and breaches of contract and warranty, because they "rel[y] on a uniform course of fraudulent conduct").

Rule 9(b) requires that a plaintiff specifically allege "when he was exposed" to the challenged statements, where he saw them, and "which ones he found material." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Courts routinely reject similar claims that fail to allege what levels of a given substance would be considered harmful or misleading to consumers. See *Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347, 2019 WL 216616, at *10 (N.D. Ill.

Jan. 16, 2019) ("[W]ithout pleading what levels of heavy metals and/or BPA are considered safe for pets, Plaintiffs cannot establish that [defendant pet food manufacturer] made misrepresentations."). Also see "The Court agrees. Krakauer's fraud by omission claims fail largely because he has not plausibly alleged that his raincoat contained dangerous PFAS in quantities sufficient to pose health risks." *Krakauer v. Recreational Equip., Inc.*, No. C22-5830 BHS, 2024 WL 1494489, at *10 (W.D. Wash. Mar. 29, 2024). *See* also Exhibit G.

## II.  THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1)

To survive a Rule 12(b)(1) facial attack on standing a plaintiff "must 'clearly . . .allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

But Plaintiffs have failed to adequately allege that they have suffered an "injury-in-fact" that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," let alone effectively allege that "the injury is fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

According to the Complaint, the only purported "substantial injury" Plaintiffs assert is that they "incurred charges and/or paid monies for the Product that they otherwise would not have incurred or paid and were unknowingly exposed to a significant and substantial health risk." See Compl. ¶ 65. Alternatively, Plaintiffs state they "would not have purchased [the Product] absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of harmful toxins." Compl. ¶ 80. Plaintiffs further assert an "injury due to the purchase of the Product that did not live up to their advertised representations." Compl. ¶ 97. In sum, the only injury alleged by Plaintiffs appears to be the economic harm of having purchased a product they claim they would not have bought if they had known it contained allegedly harmful PFAS. Plaintiffs do not assert any other personal or economic "injury-in-fact."

However, even accepting all allegations in the Complaint as true and drawing all reasonable

inferences in Plaintiffs' favor, the Complaint fails to provide sufficient factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Specifically, Plaintiffs neither identify which of the thousands of existing PFAS compounds their testing supposedly detected nor explain whether the PFAS compound allegedly found in Defendant's product is actually harmful. As previously discussed in the section "What Are PFAS," a substantial number of PFAS compounds are widely permitted and pose no known health risks. Moreover, Plaintiffs clearly misapply the relevant toxicity or safety standards in their allegations and fail to connect any alleged PFAS in the product to types that are potentially harmful. Plaintiffs attempt to use the generalized and speculative invocation of "PFAS" as a "magic word" to open the doors to federal litigation, a practice expressly rejected by multiple courts, including this Court's recent holding: "'PFAS' is not a magic word that can be invoked to open automatically the doors to federal litigation." *Bullard v. Costco Wholesale Corp.*, No. 24-CV-03714-RS, 2025 WL 506271 (N.D. Cal. Feb. 14, 2025). Accordingly, Plaintiffs fail even more clearly to establish that their alleged injury is "fairly traceable to the challenged action of the defendant."

a. **Plaintiff Fails to Plausibly Allege that Any Unit of the Product Contained "Harmful" PFAS at "Dangerous" Levels That Pose a Genuine Health Risk.**

Plaintiffs impermissibly treat all PFAS compounds as a single, uniform substance in their Complaint, broadly asserting that PFAS as a whole is "harmful." This sweeping characterization directly contradicts their own allegations. Plaintiffs themselves acknowledge that PFAS constitutes a "large, complex group of synthetic chemicals" (Compl. ¶ 4), not a single substance with uniform properties or effects.

Despite recognizing this complexity, Plaintiffs fail to distinguish among the thousands of distinct PFAS compounds and instead conflate them under a generalized theory of harm. This is particularly unreasonable given that the very sources Plaintiffs rely on expressly acknowledge that only specific PFAS compounds — and only at certain exposure levels — may pose health risks. These articles consistently differentiate between various PFAS types, recognizing that not all PFAS

are harmful, and that regulatory scrutiny is limited to certain well-studied compounds. Plaintiffs' attempt to collapse all PFAS into a single, toxic category is thus not only scientifically inaccurate but also inconsistent with their cited authorities.:

- In Paragraph 4, Plaintiff cites an article by the National Institute of Environmental Health Sciences ("NIEHS") stating that "It is important to note that there are thousands of variations in PFAS chemicals, which can make them hard to study. But the research conducted to date reveals possible links between human exposures to **certain PFAS** and some adverse health outcomes… Furthermore, the National Toxicology Program (NTP), an interagency program headquartered at NIEHS, concluded that two types of PFAS, PFOA and PFOS, suppressed the antibody response and were a hazard to immune system function in humans." Id. ¶ 4; see also Exhibit H. Plaintiff does not allege that either PFOA or PFOS was identified in the Product.

- In Paragraph 6, Plaintiff references the EPA's ORD Human Health Toxicity Values for Perfluoropropanoic Acid (2023) as support for their health risk allegations. However, the title of the document itself makes clear that it pertains solely to Perfluoropropanoic Acid, which is just one specific type of PFAS. Plaintiff does not allege that Perfluoropropanoic Acid was found in the Product, nor do they attempt to establish that this specific compound—or any other identified PFAS—was present at harmful levels.

- In Paragraph 24, Plaintiff cites an article by the Environmental Protection Agency ("EPA") titled "Our Current Understanding of the Human Health and Environmental Risks of PFAS," which states: "Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS), for example, are two of the most widely used and studied chemicals in the PFAS group. PFOA and PFOS have been replaced in the United States with other PFAS in recent years." The article further explains: "Current scientific research suggests that exposure to certain PFAS may lead to adverse health

outcomes. However, research is still ongoing to determine how different levels of exposure to different PFAS can lead to a variety of health effects." Id. ¶ 24; see also Exhibit D. Plaintiff does not allege that the Product contains either PFOA or PFOS, nor do they identify any specific PFAS in the Product that has been shown to cause adverse health effects.

- In Paragraph 25, Plaintiff references an article by the Michigan PFAS Action Response Team, which notes that "drinking and groundwater standards" apply only to certain specifically listed PFAS compounds. Compl. ¶ 25; see also Exhibit I. Plaintiff, however, does not allege that any of those regulated PFAS are present in the Product.

Moreover, as discussed in Section II of the Factual Background ("What Are PFAS") above, both the EPA and FDA have long recognized that different PFAS compounds possess different properties, and only a subset has been shown to potentially pose health risks. In fact, many other PFAS compounds—such as PTFE (polytetrafluoroethylene)—"are safe for their intended use," based on "rigorous scientific review before they are authorized for the market."

Notably, under California's Proposition 65[7] (See also Exhibit J), only three specific long-chain PFAS compounds—PFOA, PFOS, and PFNA—have been subject to regulation. Plaintiff, however, does not allege that any of these regulated substances were identified in the Product.

In sum, despite the overwhelming and well-documented scientific consensus that PFAS constitute a broad and chemically diverse class of substances—only some of which may be harmful, while many others are not — Plaintiff fails to identify in the Complaint which specific PFAS compound, if any, was present in the Product. Nor does Plaintiff make any preliminary showing that the type of PFAS allegedly present is one that is known to be harmful. Instead, Plaintiff relies on a conclusory and overly broad assertion that all PFAS are inherently harmful, and that the mere

---

[7] California Office of Environmental Health Hazard Assessment, *PROPOSITION 65 LIST OF CARCINOGENS OR REPRODUCTIVE TOXICANTS*. See https://oehha.ca.gov/sites/default/files/media/downloads/proposition-65/p65chemicalslist.pdf (last updated Jan. 3, 2025).

presence of any PFAS renders the Product toxic. This position is internally inconsistent and, more importantly, fails to provide sufficient factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff's theory of injury is likewise unsubstantiated. Even assuming all factual allegations in the Complaint are true, Plaintiff fails to plausibly establish that the purchase of a Product allegedly containing PFAS resulted in a concrete "injury-in-fact". The mere allegation that PFAS was present, without identifying the specific type and whether that type is in fact harmful, does not support a credible claim of economic loss. Without a plausible allegation that a harmful type of PFAS was actually present in the Product, Plaintiff cannot reasonably assert that the Product's value was diminished or that they would have declined to purchase it had they known.

Moreover, Plaintiffs also fail to credibly allege that the amount of the specific PFAS compound allegedly present in the Product would be considered dangerous. Setting aside Plaintiffs' failure to identify the specific type of PFAS, the comparative benchmarks they rely on to claim that the PFAS level is excessive are clearly erroneous and internally inconsistent.

Plaintiffs' primary attempt to demonstrate that the Product contains a "dangerous amount" of harmful substances relies on two distinct but equally flawed comparisons—each referencing unrelated PFAS compounds and applying incompatible standards.

First, Plaintiffs reference the EPA's ORD Human Health Toxicity Values for Perfluoropropanoic Acid (2023). See Compl. ¶ 6. Although Plaintiffs do not identify any specific numeric threshold in their Complaint, they assert that PFAS levels in the Product exceed "320 times" an applicable limit. Based on that claim, it appears they are relying on the only quantified value in the ORD report: $5 \times 10^{-4}$ mg/kg-day, which represents an oral reference dose (RfD)—that is, the estimated daily intake per kilogram of body weight that is unlikely to result in adverse health effects.

However, Plaintiffs do not allege that the **Product contains Perfluoropropanoic Acid**, the specific compound to which that RfD applies. Rather, they vaguely allege that "PFAS" were detected. More importantly, they attempt to compare this daily intake threshold (RfD) with a

laboratory test result showing "over 160 parts per billion (PPB)" of PFAS in the Product. This comparison is scientifically incoherent and fundamentally flawed.

The RfD is a dose-based standard, expressed in mg/kg of body weight per day[8] (See also Exhibit B) . In contrast, the 160 PPB figure is a static concentration within the vape liquid[9] (See also Exhibit C). These units represent fundamentally different concepts—dose versus concentration—and cannot be meaningfully compared without applying an exposure assessment model accounting for frequency, bioavailability, and absorption. Plaintiffs offer no such model and fail to allege that any user would actually absorb PFAS from the Product in amounts approaching the referenced RfD. Nor do they allege that Perfluoropropanoic Acid was ever detected in the Product. Thus, Plaintiffs' "320 times the limit" claim is built on a false equivalence and fails to establish any credible health risk or misrepresentation.

Second, Plaintiffs rely on a news article from The Guardian titled "New report finds most U.S. kale samples contain 'disturbing' levels of 'forever chemicals'". See Compl. ¶ 6. This article is not a peer-reviewed publication or government-issued report. Upon closer examination, the article references a non-governmental pilot study conducted by the Alliance for Natural Health USA, titled "PFAS in Kale Pilot Study"[10] (See Also Exhibit K). That study tested kale samples and detected various specific PFAS compounds, including: Perfluorobutanoic acid (PFBA), Perfluoropentanoic acid (PFPA), Perfluorohexanoic acid (PFHxA), Perfluoroheptanoic acid (PFHpA), Perfluorooctanoic acid (PFOA), Perfluorononanoic acid (PFNA), Perfluorodecanoic acid (PFDA), Perfluorobutane sulfonic acid (PFBS), Perfluoropentane sulfonic acid (PFPS),

---

[8] "[t]he RfD is generally expressed in units of milligrams per kilogram of bodyweight per day **(mg/kg/day)**." This value represents the estimated daily exposure to a substance that is not likely to cause harmful effects over a lifetime. See U.S. Envtl. Prot. Agency, Reference Dose (RfD): Description and Use in Health Risk Assessments, https://www.epa.gov/iris/reference-dose-rfd-description-and-use-health-risk-assessments (last visited Apr. 2, 2025).

[9] "Another common unit is parts per billion (ppb), which is also expressed as microgram per liter (μg/l) or microgram per kilogram (μg/kg). In drinking water results, you may also see parts per trillion (ppt)....One ppb would be equal to one drop of ink in a 10,000-gallon swimming pool." See Missouri Dep't of Nat. Res., Understanding Data, https://dnr.mo.gov/monitoring/understanding-data (last visited Apr. 2, 2025).

[10] Alliance for Natural Health USA, *PFAS in Kale Pilot Study*, https://anh-usa.org/wp-content/uploads/2023/06/230621-ANH-USA-PFAS-in-Kale.pdf (June 21, 2023).

1    Perfluorohexane sulfonic acid (PFHxS), Perfluoroheptane sulfonic acid (PFHS), Perfluorooctane

2    sulfonic acid (PFOS), 4,8-Dioxa-3H-perfluorononanoic acid, 9Cl-PF3ONS, HFPODA, and 11Cl-

3    PF3OUdS.

4        Critically, the PFAS compound Plaintiffs rely upon in their first standard—

5    Perfluoropropanoic Acid—is not among the substances detected in the kale study. This discrepancy

6    reveals a fundamental inconsistency: Plaintiffs cite two different benchmarks based on two entirely

7    different PFAS substances, and attempt to compare the same 160 PPB value in the Product to

8    standards that relate to different chemicals. This reflects that Plaintiffs either do not know what

9    specific compound the reported 160 PPB refers to, or they lack any valid comparator to

10   demonstrate that the compound—whatever it may be—is present at a level that exceeds regulatory

11   limits or constitutes a health hazard. This is scientifically invalid.

12       In conclusion, Plaintiffs fail to plausibly allege that the Product contains any specific

13   harmful PFAS compound at a dangerous amount. The standards they invoke are not applicable to

14   the substances they claim were detected, and their theory of exceedance rests on mismatched,

15   scientifically unsupported comparisons. This failure of both factual precision and scientific

16   reasoning is fatal to any claim based on alleged toxicity or misrepresentation.

17       Plaintiffs' clearly erroneous assertion regarding the alleged "dangerous" amount of a

18   specific PFAS compound further underscores their failure to establish a reasonable and sufficient

19   injury in fact. Without plausibly alleging that a harmful PFAS was present at a level that poses an

20   actual risk, Plaintiffs cannot demonstrate a concrete and particularized injury necessary to satisfy

21   Article III standing.

22       This deficiency aligns with how courts in this district have addressed similar claims. In

23   *Bullard v. Costco Wholesale Corp.*, the court dismissed the complaint, finding that "Bullard has

24   failed to allege sufficient facts that, if proven, would show the product at issue contains ingredients

25   [PFAS] of a type and in such quantities to make her various theories of relief viable." No. 24-CV-

26   03714-RS, 2025 WL 506271, at *2 (N.D. Cal. Feb. 14, 2025). In *Herrington v. Johnson & Johnson

27   Consumer Cos.*, the court dismissed for lack of standing where plaintiffs failed to "plead that the

28

---

amounts of the substances in Defendants' products have caused harm or create a credible or substantial risk of harm." No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010). Similarly, in *Boysen v. Walgreen Co.*, the court found no economic injury where the plaintiff pled "that arsenic and lead are harmful toxins, and that the products contain those toxins," but not "that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm," even though he alleged "material and significant levels." No. C 11-06262, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012). In *Andrews v. Procter & Gamble Co.*, the court dismissed PFAS-based consumer fraud claims because the plaintiff "fail[ed] to adequately allege [the product] contains elevated amounts of PFASs." No. EDCV 19-00075 AG (SHKx), 2019 WL 6520045, at *3 (C.D. Cal. Dec. 4, 2019).

And in *Krakauer*, the court likewise held that "Krakauer's fraud by omission claims fail largely because he has not plausibly alleged that his raincoat contained dangerous PFAS in quantities sufficient to pose health risks." 2024 WL 1494489, at *10.

b. **The Complaint Fails to Allege That the Tested Product Was Purchased by Plaintiffs and That the Product They Purchased Was Harmful**

Plaintiffs have not plausibly alleged that the Product they purchased actually contained PFAS. The Complaint merely states that "**Plaintiffs' counsel commissioned** a Department of Defense ELAPcertified laboratory to test the Defendants' Flum Float vape". See Compl. ¶ 6. However, Plaintiffs do not allege that the tested sample was one they themselves purchased, or that it came from the same batch, lot, or even flavor as their purchase. In fact, the Complaint omits any detail about the number of samples tested, who conducted the testing, when or where it occurred, or what specific PFAS analytes were found.

These omissions are critical. Courts have consistently held that plaintiffs lack Article III standing where they fail to allege that the specific unit they purchased was contaminated. See *Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *10 (S.D. Cal. Mar. 7, 2023) ("plaintiff must proffer allegations that enable this Court to infer she purchased a unit of Product

contaminated with PFAS"); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("plaintiff has failed to plead a particularized injury by failing to plead the water he purchased contained violative arsenic levels"); *Bowen v. Energizer Holdings, Inc.*, No. 23-55116, 2022 WL 18142508, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) ("Plaintiff's claim is based on the hypothetical possibility that the products she purchased may have contained benzene"); *Krakauer*, 2024 WL 1494489, at *10 ("Krakauer has not plausibly alleged that his raincoat contained dangerous PFAS in quantities sufficient to pose health risks").

Plaintiffs allege even less than in those cases. They do not identify what specific PFAS compounds were found, provide no details about the testing process or sample source, and make no attempt to link the tested product to the units they actually purchased. Their claims rest entirely on the unsupported assumption that all Flum Float products—including their own—contain the same PFAS.

On these facts, Plaintiffs cannot establish an injury in fact and therefore lack standing under Article III to pursue their all claims.

## III. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6)

A plaintiff's complaint must allege facts to state a claim for relief that is plausible, meaning that he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Although courts must accept as true the complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. Vasquez v. Los Angeles Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

Fraud claims require plaintiffs to allege facts with heightened specificity in order to survive dismissal. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). For affirmative misrepresentations, "a plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). For fraudulent omissions, plaintiffs

"must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N. Am.*, No. CV 11–9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) (citation omitted).

Plaintiffs assert claims sounding in fraud—including fraudulent concealment and statutory consumer deception—they must meet the heightened pleading standard of Rule 9(b).

Plaintiffs' failure to plausibly allege that the Flum Float product contains **dangerous** PFAS is fatal to their fraud-based claims. As in *Krakauer*, "[w]ithout alleging the presence of a chemical that customers actually care about, Plaintiff cannot plausibly allege that [Defendant] did anything deceptive or had a duty to disclose the presence of such PFAS." *Krakauer*, 2024 WL 1494489, at *10. Plaintiffs do not allege what specific PFAS compounds were detected, whether those compounds are known to pose health risks, or whether they were present at levels sufficient to render the product unsafe or materially different from what was advertised. As a result, their omission-based fraud theory fails at the threshold.

This deficiency alone warrants dismissal. Fraud claims require more than speculation—they require concrete factual allegations. See *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549–53 (9th Cir. 1994) (a plaintiff must "allege evidentiary facts to support [his] theories of fraud"), superseded by statute on other grounds as stated in *Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696 (9th Cir. 2013). Courts likewise reject consumer protection claims under the CLRA, UCL, and FAL where plaintiffs fail to plead facts showing that the challenged advertising was actually false or misleading. See *Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009).

### a. <u>Plaintiffs Do Not Plausibly Allege That Any Aspect of the Product's Packaging or Advertising Is Misleading or Deceptive.</u>

Plaintiffs' statutory claims under CLRA and UCL, along with their common-law claims for

Fraudulent Concealment or Omission and Breach of the Implied Warranty of Merchantability, are all premised on the allegation that the Flum Float Product's packaging and advertising contain misrepresentations and/or omissions about its ingredients—specifically, the alleged presence of PFAS.

All of these claims are subject to the "reasonable consumer" standard, which requires Plaintiffs to "show that members of the public are likely to be deceived" by the challenged representations. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). But Plaintiffs do not identify any statement on the Product's packaging or in advertising materials that affirmatively claims the Product is PFAS-free. Nor do they allege that PFAS are listed as ingredients or that any of the disclosed ingredients are false or misleading.

Instead, Plaintiffs rely on general branding elements—such as the word "Float," images of fresh fruit, bright, colorful packaging, and juice-splattered backgrounds—to support their claim that the Product is marketed as "light and harmless." See Compl. ¶ 36. They allege that these design choices were intended to convey that the Product is "delightful" and minimally impactful on the body, and thereby suggest the absence of harmful substances such as PFAS. But none of these features constitutes an express or implied representation about chemical content, and no reasonable consumer would interpret such aesthetic or thematic elements as a factual guarantee that the Product is entirely free of incidental trace compounds.

The reasonable consumer standard demands more than a mere possibility that a label or image "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003)). It requires a showing that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Courts applying this standard have routinely rejected claims based on the alleged presence of trace substances where the product made no specific representations regarding their absence.

In *Hawyuan Yu v. Dr. Pepper Snapple Group, Inc.*, for example, this Court dismissed

claims that a "natural" label on apple juice was misleading, holding that a reasonable consumer would not believe the product was "free of any trace pesticides whatsoever." No. 18-CV-06664-BLF, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020). Other courts have reached similar conclusions. See *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 174 (E.D.N.Y. 2018), aff'd, 813 F. App'x 701 (2d Cir. 2020) (label "Florida's Natural" not misleading even if product contained trace glyphosate); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 2019 WL 1924906, 247 (S.D.N.Y. 2019) (reasonable consumer would not require "natural" to mean "zero" synthetic content).

Nor do Plaintiffs identify what PFAS compounds were actually found in the Product or allege that any are toxic or harmful. See Section II, supra. Without those critical details, Plaintiffs cannot plausibly claim that any challenged statement was materially misleading. As Judge Wilken explained in *Herrington v. Johnson & Johnson Consumer Cos.*, where plaintiffs alleged children's bath products contained carcinogens, dismissal was warranted because the complaint did not "aver[] facts that show that the levels of these substances caused them or their children harm." No. C 09–1597 CW., 2010 WL 3448531, at *1, *8 (N.D. Cal. Sept. 1, 2010). "[U]nder the objective test for materiality," she concluded, "the alleged non-disclosures are not actionable." *Id.* The same is true here.

**b.** **Plaintiffs Cannot State a Claim Based on Omission Under California Consumer Protection Laws.**

Plaintiffs' omission-based claims under the CLRA and UCL independently fail because they do not meet the legal threshold for an actionable omission. To state a claim based on an omission, Plaintiffs must allege either (1) that the omission is contrary to a representation actually made by the defendant, or (2) that the defendant had a duty to disclose the omitted fact. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). California courts have rejected any broad or generalized duty to disclose. *Id.*

As discussed, Plaintiffs do not identify any affirmative representation on the Product's packaging or advertising that plausibly relates to the incidental presence of PFAS. Nor are

1  manufacturers obligated to disclose speculative or trace-level risks associated with environmental

2  contaminants. A duty to disclose only arises in two narrow scenarios: where the omission involves

3  (1) an unreasonable safety hazard, or (2) a material defect central to the product's function, and the

4  plaintiff also pleads one of the four factors outlined in *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539,

5  543 (Cal. Ct. App. 1997)—namely: (1) a fiduciary relationship, (2) exclusive knowledge of

6  material facts, (3) active concealment, or (4) partial representations accompanied by suppression of

7  material facts. See also *Hodsdon*, 891 F.3d at 868.

8        Plaintiffs plead none of these elements. They do not identify which PFAS compound was

9  allegedly detected, and they do not allege that the PFAS was of a type recognized by regulators as

10  hazardous or present at a level exceeding any established regulatory threshold. See *Rodriguez v.

11  Mondelez Global, LLC*, No. 23-cv-00057-DMS-AHG, 2023 WL 8115773, at *10 (S.D. Cal. Nov.

12  22, 2023) (dismissing PFAS omission claims where plaintiff failed to identify the specific

13  compound or regulatory violation). Absent such allegations, Plaintiffs cannot plausibly claim the

14  existence of a "safety hazard," nor can they establish that any alleged defect is "material" or

15  "central" to the Product's function.

16        Nor have Plaintiffs plausibly alleged any of the *LiMandri* factors. There is no fiduciary

17  relationship between the parties. Plaintiffs do not plead that Flumgio had exclusive knowledge of

18  material facts, nor do they allege any facts suggesting active concealment or partial disclosure.

19  Vague references to unspecified "laboratory testing" fall far short of demonstrating a material

20  omission that would support any duty to disclose. See *LiMandri*, 60 Cal. Rptr. 2d at 543.

21        Courts across jurisdictions have rejected similar PFAS-based omission theories. In *Seidl v.

22  Artsana, USA, Inc.*, the court dismissed omission claims where the plaintiff argued that car seats

23  should have included PFAS disclaimers, reasoning that a consumer's "own personal preferences

24  are not enough to establish a claim." 643 F. Supp. 3d 521, 2022 WL 17337910, 531 (E.D. Pa.

25  2022). Likewise, in *Garland v. Children's Place, Inc.*, the court held that "it is not plausible that a

26  reasonable consumer would interpret [the defendant's] silence on the issue of PFAS to indicate that

27  its school uniforms were 100 percent PFAS-free." No. 23 C 4899, 2024 WL 1376353, at *7 (N.D.

28

Ill. Apr. 1, 2024).

The same is true here. Plaintiffs' omission theory is unsupported by the facts alleged and is legally deficient under well-established precedent.

**c.** **Plaintiffs Cannot State a Claim Based on Breach of Implied Warranty of Merchantability.**

The implied warranty of merchantability under California law merely requires that a product be "fit for the ordinary purposes for which such goods are used." See Cal. Com. Code § 2314(2)(c). Significantly, merchantability does not demand that a product be flawless or free of all substances—only that it functions as expected for its intended ordinary use. *See Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (2009).

Here, Plaintiffs do not plausibly allege that the Flum Float vape products were unfit for their ordinary purpose. Plaintiffs do not claim that the Products failed to operate properly, nor do they allege any adverse effects resulting from their use. To the contrary, as supported by credible regulatory sources, PFAS are commonly used in a wide range of consumer products, and their mere presence does not imply harm or compromise product functionality. Accordingly, even assuming Plaintiffs' allegations to be true, the incidental presence of trace amounts of PFAS does not render the Products unmerchantable under California law.

### CONCLUSION

For the foregoing reasons, Defendant Flumgio respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

Dated: April 3, 2025                    **SHM LAW FIRM**

By: *<u>/s/ Hongchang Deng</u>*
      Hongchang Deng
      State Bar No. 354529
      25F, China Resources Tower
      2666 Keyuan South Road, Nanshan
      Shenzhen, 518052, China
      *Attorney for Defendant Flumgio Technology, Inc.*